David W. CRAWFORD,
Plaintiff–Appellant,

v.

Louis W. SULLIVAN, Secretary of
Health and Human Services,
Defendant–Appellee.

No. 90–1707.

United States Court of Appeals,
Fourth Circuit.

Argued July 20, 1990.

Decided June 5, 1991.

Martin Douglas Wegbreit, argued, Client Centered Legal Services of Southwest Virginia, Inc., Castlewood, Virginia, for plaintiff-appellant.

Margaret J. Krecke, Office of the Gen. Counsel, Dept. of Health and Human Services, argued, Philadelphia, Pa. (Beverly Dennis, III, Chief Counsel, Region III, Charlotte Hardness, Chief, Social Sec. Liti-

gation Div., Jacquelyn Cusumano, Asst. Regional Counsel, Office of the Gen. Counsel, Dept. of Health and Human Services, Philadelphia, Pa., John P. Alderman, U.S. Atty. and Jean M. Barrett, Asst. U.S. Atty., on brief), Roanoke, Va., for defendant-appellee.

Before RUSSELL, WIDENER and HALL, Circuit Judges.

WIDENER, Circuit Judge:

Social security claimant David W. Crawford appeals the district court's denial of his motion for attorney's fees under the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412(d)(1)(A). We are of opinion that the district court did not abuse its discretion in finding that the government's position regarding Crawford's claim for social security benefits was substantially justified and we affirm.

On June 11, 1982, the Secretary of Health and Human Services (Secretary) notified Crawford that he was no longer eligible to receive the disability insurance benefits he had been qualified to receive since April 1, 1975.[1] Crawford's benefits were terminated based on a finding under the currently disabled standard that his disability had ceased. Crawford appealed this determination to an Administrative Law Judge (ALJ). The ALJ, on February 25, 1983, decided that Crawford's disability had ended as of June 1982. The Appeals Council denied Crawford's request for review. On July 12, 1983, Crawford filed an action in the United States District Court for the Western District of Virginia seeking judicial review of the Secretary's decision. On October 6, 1983, while Crawford's case was pending before the district court, we handed down our decision in *Dotson v. Schweiker*, 719 F.2d 80 (4th Cir.1983). In *Dotson*, we held that the Secretary's currently disabled standard was improper. We held that an initial determination of disability gives rise to a presumption that the disability continues. In order to rebut this presumption, the Secretary must come forward with evidence that the claimant's con-

dition has improved. The government filed its answer and motion for summary judgment on October 18. The district court, on January 24, 1984, remanded Crawford's case to the Secretary for reconsideration in light of the *Dotson* decision. On October 9, 1984, prior to reconsideration of Crawford's case, Congress enacted the Social Security Disability Benefits Reform Act of 1984. 42 U.S.C. § 423(f). Section 423(f) provides that terminations must be based on substantial evidence of medical improvement either in fact or technique. However, it does not establish a presumption of continuing disability. On remand, Crawford's case was reconsidered under the statutory medical improvement standard. After Crawford appealed an adverse decision by the agency, an Administrative Law Judge ruled in Crawford's favor on June 29, 1987. Crawford applied for and, on July 17, 1989, was granted a final judgment in his case by the district court. Crawford applied for attorney's fees under the EAJA on July 24, 1989, which the district court denied on January 8, 1990.

Eligibility for an award of fees under the EAJA requires: (1) that the claimant be a "prevailing party"; (2) that the government's position was not "substantially justified"; (3) that no "special circumstances make an award unjust"; and, (4) that the fee application be submitted to the court within 30 days of final judgment and be supported by an itemized statement. 28 U.S.C. § 2412. The sole issue in dispute on appeal is whether the government's position was "substantially justified."

■ The district court's determination that the government's position was substantially justified is reviewed by this court under an abuse of discretion standard. *Pierce v. Underwood*, 487 U.S. 552, 562–563, 108 S.Ct. 2541, 2548–2549, 101 L.Ed.2d 490 (1988). The government can defeat a claim for attorney's fees by showing that its position had a reasonable basis in both fact and law. *Pierce v. Underwood*, 487 U.S. at 565, 108 S.Ct. at 2550 (citing, *inter alia, Anderson v. Heckler*, 756 F.2d 1011, 1013 (4th Cir.1985)). The government's po-

---

1. On October 21, 1977, an ALJ ruled that Crawford had "a significant mental and emotional impairment of long-standing which precludes him from engaging in any substantial gainful work." The ALJ held that Crawford was entitled to disability insurance benefits from April 1, 1975.

sition "encompass[es] both the agency's prelitigation conduct and the Department of Justice's subsequent litigation position[ ]." *I.N.S. v. Jean,* ── U.S. ──, ──, 110 S.Ct. 2316, 2319, 110 L.Ed.2d 134 (1990).

Generally, the Secretary may terminate disability benefits when evidence shows that the disability has ceased. See 42 U.S.C. § 423. Prior to 1980, the Secretary, utilizing the medical improvement standard, would not determine that a disability had ceased unless the claimant's condition had improved since the last determination of disability. *Rhoten v. Bowen,* 854 F.2d 667, 668 (4th Cir.1988) (citations omitted). In 1980, the Secretary abandoned the medical improvement standard in favor of the currently disabled standard. 854 F.2d at 668. Under the new standard, the Secretary would terminate benefits if it was found, on the basis of new evidence, that the person was not then disabled. 854 F.2d at 668.

■ In *Dotson v. Schweiker,* as stated, we struck down the Secretary's use of the currently disabled standard. 719 F.2d 80 (4th Cir.1983). However, the Secretary is not automatically liable for attorney's fees every time he loses a case.[2] *Smith v. Heckler,* 739 F.2d 144, 147 (4th Cir.1984). There is no "presumption that the Government position was not substantially justified, simply because it lost the case." *Tyler Business Services, Inc. v. NLRB,* 695 F.2d 73, 75 (4th Cir.1982). *Dotson* does not stand for the proposition that every termination of benefits during the use of the currently disabled standard was not substantially justified. In the present case, even after Crawford's case was evaluated under the new Congressionally mandated standard, he was initially denied benefits, for evidence was presented which suggested that Crawford was, in fact, no longer

entitled to receive benefits. "[T]he test is whether arguably there was substantial evidence to support the Secretary's position." *Anderson, infra,* 756 F.2d at 1013. We think that there was.

The government relied on the reports of two experts in deciding to terminate Crawford's benefits. Although the evidence presented in the reports was later determined by an Administrative Law Judge to be insufficient, it is evidence which arguably tends to support the government's position in terminating Crawford's benefits.

Michael J. Heggarty, a licensed psychological examiner, evaluated Crawford. Heggarty found "no evidence of a thought disorder, hallucinations, or delusions." Crawford was able to recall seven digits forward and five digits backward. His IQ was found to be within the average range. There was no evidence of disorders in immediate, recent, or remote memory. Heggarty found Crawford to be "competent to handle his own funds." He concluded his report by stating that Crawford "does not have even mild organic brain damage."

Dr. Harry W. Bachman, Jr., a board certified orthopedist, conducted an orthopedic exam of Crawford. He found "no evidence of any orthopaedic abnormality in [Crawford's] spine." Dr. Bachman concluded that Crawford "should be able to perform any occupation within his intellectual capacity."

Based on the evidence presented in these reports, we cannot say that the district court abused its discretion in determining that the government was substantially justified in terminating Crawford's benefits.

■ Crawford argues that even if the position of the Secretary was initially justified, the litigation position of the Department of Justice in filing its motion for summary judgment twelve days after *Dot-*

---

**2.** Crawford argues that *Rhoten v. Bowen,* 854 F.2d 667 (4th Cir.1988), controls this case and that the district court abused its discretion in failing to follow it. The *Rhoten* plaintiffs, like Crawford, had their disability benefits terminated under the "currently disabled" standard and subsequently reinstated when evaluated under the new Congressional standard. However, the issue of substantial justification was not raised in *Rhoten.*

In *Rhoten,* on appeal, the Secretary conceded the question of substantial justification, 854 F.2d at 669, so that tactical decision has no bearing on the present case. *Rhoten* determined that claimants who filed suit but then had their benefits restored by Congressional action were "prevailing parties" under the EAJA. The government does not dispute that Crawford is a prevailing party. Therefore, *Rhoten* is not significant in the resolution of this case.

*son v. Schweiker,* 719 F.2d 80 (4th Cir. 1983), was decided was not substantially justified. Crawford contends that the Secretary was not substantially justified in filing a motion for summary judgment since *Dotson* mandated that disability benefits could not be discontinued absent a finding of medical improvement and there had been no finding of medical improvement in Crawford's case.

■ Crawford has not taken into account, however, that "[t]he government's position in the district court normally would be substantially justified if, as is usual, the United States attorney does no more than rely on an arguably defensible administrative record." *Guthrie v. Schweiker,* 718 F.2d 104, 108 (4th Cir.1983). But the government has the burden of proving that its litigation position was substantially justified. *Lively v. Bowen,* 858 F.2d 177, 180 (4th Cir.1988).

Administrative agencies must "follow the law of the circuit whose courts have jurisdiction over the cause of action." *Hyatt v. Heckler,* 807 F.2d 376, 379 (4th Cir.1986), *cert. denied,* 484 U.S. 820, 108 S.Ct. 79, 98 L.Ed.2d 41 (1987). The government's non-acquiescence in the law of the circuit entitles the claimant to recover attorney fees. *Hyatt v. Heckler,* 807 F.2d 376; see *Anderson v. Heckler,* 756 F.2d 1011, 1013 (4th Cir.1985). In the instant case, the government took no position in opposition to established precedent of the court. The government, in fashioning its reply to the claimant's complaint, was simply unaware of the *Dotson* decision. After the government became aware of *Dotson* it took no action to oppose remand of the case. In any event, the petition for rehearing in *Dotson* was not denied until January 11, 1984, three months after the government filed its motion for summary judgment, 719 F.2d at 80, so our *Dotson* decision was not even final when the government filed its motion for summary judgment.

The Sixth Circuit has ruled in a dissimilar case on the same subject that the Secretary's position was not substantially justified. *Perket v. Secretary of Health and Human Services,* 905 F.2d 129 (6th Cir. 1990). After Perket filed his complaint, the Sixth Circuit decided *Haynes v. Secretary of Health and Human Services,* 734 F.2d 284 (6th Cir.1984). *Haynes,* like *Dotson,* held that to terminate disability benefits the Secretary must present evidence that the claimant's disability had improved since the original determination of disability, and that there was a presumption similar to ours adopted in *Dotson.* Unlike the instant case, the *Perket* claimant filed a motion for summary judgment based on the circuit's holding that a medical improvement standard must be used. *Perket* at 131. "The Secretary responded with a cross-motion which challenged *Haynes.* It acknowledged that 'the Court of Appeals for this circuit has adopted a medical improvement standard and that this Court is bound to apply [*Haynes*],' but it nevertheless contested Perket's summary judgment motion on the ground that no medical improvement standard was applicable to termination cases." *Perket* at 131. Before the case was heard on the merits, it was remanded pursuant to Congressional action.[3] After reevaluation pursuant to the new guidelines, the Secretary determined that Perket was still disabled and reinstated his benefits. *Perket* at 131. The district court granted Perket's motion for attorney fees. The Sixth Circuit, in affirming the award of attorney fees, held that "[t]he clarity of this court's holding in *Haynes* rendered the government's opposition to Perket's summary judgment motion unreasonable." *Perket* at 135.

Unlike *Perket,* in this case the government took no position in opposition to established Fourth Circuit precedent. Only twelve days passed between the decision in *Dotson* and the government's filing of its answer and motion for summary judgment. The claimant made no mention of *Dotson* at any time prior to the government's filing of its answer and motion for summary judgment. The government did not oppose

---

**3.** The Social Security Disability Reform Act of 1984 mandated the remand to the Secretary of disability termination cases pending as of September 19, 1984 for reevaluation under a newly promulgated medical improvement standard. Pub.L. No. 98–460, §§ 2(a) and 2(d)(2)(C), 98 Stat. 1794, 1797–98 1984).

the remand order by way of moving to reconsider the same.

The intent of Congress in enacting the EAJA was to "penalize unreasonable behavior on the part of the government without impairing the vigor and flexibility of its litigating position." *United States v. B & M Used Cars*, 860 F.2d 121 (4th Cir.1988) (quoting *Pullen v. Bowen*, 820 F.2d 105, 107 (4th Cir.1987)). We are of opinion the government's conduct in this case was reasonable and that it has sustained its burden of proving that its litigation position was substantially justified.

The judgment of the district court is accordingly

AFFIRMED.

K.K. HALL, Circuit Judge, dissenting:

Because the district court's ruling is clearly at odds with prior decisions of this court, I conclude that it abused its discretion in denying EAJA attorney's fees.

Before 1980, the Secretary applied a standard of "medical improvement" to continuation of disability benefits. A claimant was entitled to a presumption of continuation of disability unless there was evidence of medical improvement. In 1980, allegedly in reliance upon the Social Security Disability Amendments of 1980,[4] the Secretary abandoned the old standard in favor of a so-called "current disability" test. In practice, the "current disability" test was a *de novo* review at which the claimant had to prove his disability all over again. Thousands of longstanding disability claimants had their benefits terminated, including appellant Crawford.

Inevitably, the Secretary's change in policy was challenged in the courts. The Secretary lost uniformly. *Patti v. Schweiker*, 669 F.2d 582 (9th Cir.1982); *Simpson v. Schweiker*, 691 F.2d 966 (11th Cir.1982); *Kuzmin v. Schweiker*, 714 F.2d 1233 (3d Cir.1983); *Haynes v. Secretary of Health and Human Services*, 734 F.2d 284 (6th Cir.1984). When the issue came before this

court, I wrote the opinion on behalf of the same panel that has heard this appeal. This excerpt sums up our holding:

The Secretary contends that [the claimant] had the burden of proving disability at all times. At oral argument, the Secretary urged us to adopt his contention so that if a mistake had been made in awarding benefits, the Secretary could have another physician review the medical evidence, that was previously held to be sufficient to support an award of benefits, and interpret that same evidence to support a later determination that the claimant's disability had ceased. The Secretary conceded that if a mistake had been made in denying benefits, the claimant could not rely on past evidence. In short, the Secretary argues he should be allowed as many "bites of the apple" as he wants. We reject the Secretary's contention as patently unfair.

*Dotson v. Schweiker*, 719 F.2d 80, 81 (4th Cir.1983).

The Secretary argues that he cannot be faulted for taking a position contrary to *Dotson* before *Dotson* was announced. He convinces the majority that his post-*Dotson* answer and motion for summary judgment were inadvertantly caused by delays in mailing and the slow trickling down of newly-announced opinions. I find this assertion incredible. *Dotson* was no obscure case, and we no petty court. The Secretary was a *party* in *Dotson*. Every government attorney handling social security cases should have known about it by the time the answer was filed in this case.[5]

In any event, the Secretary's argument misses the point. In *Dotson*, this court, indeed this panel, described the Secretary's position as "patently unfair." The same position was every bit as "patently unfair" in appellant's case, whether it were taken before or after *Dotson* was announced. Once this governmental position forced Crawford to initiate litigation, his ultimate entitlement to an EAJA fee award for the entire litigation was established. *Commis-*

---

4. These amendments required the Secretary to conduct a periodic review of all disability claims. They did not, however, require or even authorize the Secretary to change the standard of review.

5. The Secretary's conjecture that *Dotson* somehow crept up unseen or unheard seems even less conceivable when one considers that three circuits had already condemned the "current disability" test. The fact is, when the Secretary

*sioner, I.N.S. v. Jean,* —— U.S. ——, 110 S.Ct. 2316, 110 L.Ed.2d 134 (1990).[6] Whether the Secretary's conduct in this case was reasonable in light of *Dotson* is irrelevant, because it was not reasonable to begin with. EAJA fee eligibility "properly focuses on the governmental misconduct giving rise to the litigation." *Id.* 110 S.Ct. at 2323.

Crawford asserts, I believe with ample cause, that the issue presented by this case was squarely decided by this court in *Rhoten v. Bowen,* 854 F.2d 667 (4th Cir.1988). In *Rhoten,* this very same attorney was denied EAJA attorney's fees by the same district court judge, and this court reversed. The claimants in *Rhoten* are indistinguishable from Crawford. Their benefits had been terminated; *Dotson* caused a remand from their district court actions; DIBRA was enacted; ultimately, they were awarded benefits.

In *Rhoten,* the Secretary argued that the claimants were not "prevailing parties" because they had received reinstatement of benefits after DIBRA, rather than directly under *Dotson. The Secretary conceded that his position had not been substantially justified.* This court rejected the Secretary's argument, held that the claimants were "prevailing parties," and awarded EAJA attorney's fees.

With the "prevailing party" issue dead, the Secretary now asserts that he conceded the lack of "substantial justification" only for purposes of the *Rhoten* case, and that his pre-*Dotson* position was actually substantially justified.

There is nothing in *Rhoten* to indicate that the Secretary's concession was anything other than unequivocal. Indeed, in light of this court's characterization of the "currently disabled" test as "patently unfair," this concession bordered on the oblig-

atory. Incredibly, the Secretary has now reneged on all of this, and argues that his "currently disabled" test was reasonable. The Secretary's ever-shifting postures leave me exasperated.

Appellant Crawford was forced to vindicate his rights in court because the government took a "patently unfair" position in terminating his disability benefits. He is entitled to EAJA attorney's fees, and the district court's denial of them was an abuse of discretion. I would reverse.

I respectfully dissent.

---

filed his answer and motion for summary judgment in this case, he had not surrendered on the *Dotson* issue. He petitioned for rehearing of *Dotson,* which was denied January 11, 1984. In light of the petition for rehearing, I believe that the Secretary's defense in this case was calculated to preserve his position in case *Dotson* were overturned en banc.

**6.** The majority's quote (at 657) from *Jean* is misleading. Though an unjustified "position of

the United States" can include misconduct during the litigation, the very holding of *Jean,* stated later in the same sentence the majority partially quotes, is "that only one threshold determination for the entire civil action is to be made." 110 S.Ct. at 2319. "EAJA ... favors treating a case as an inclusive whole rather than as atomized line-items." *Id.* at 2320.