46 F.3d 1125
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
In Re: Rosemarie LAMSON, Appellant,
UNITED STATES of America, Plaintiff-Appellee,
v.
George H. LAMSON, Defendant-Appellant,
and 21.52 Acres of Land, more or less, in Clarke County,
Virginia, Defendant.
 No. 94-1249.
 United States Court of Appeals, Fourth Circuit.
 Argued Dec. 7, 1994.
Decided Feb. 10, 1995.
 
 Appeal from the United States District Court for the Western District of Virginia, at Harrisonburg. B. Waugh Crigler, Magistrate Judge. (CA-90-74-H)
 ARGUED: Norman Hunter Lamson, Sr., Charlottesville, Virginia, for Appellants. Jonathan Flint Klein, Environment and Natural Resources Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee. ON BRIEF: Lois J. Schiffer, Acting Assistant Attorney General, Jacques B. Gelin, Environment and Natural Resources Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C.; Robert P. Crouch, Jr., United States Attorney, Richard A. Lloret, Assistant United States Attorney, Roanoke, Virginia; Anthony R. Conte, Office of the Solicitor, DEPARTMENT OF THE INTERIOR, Newton Corner, Massachusetts, for Appellee.
 Before HALL and LUTTIG, Circuit Judges, and CURRIE, United States District Judge for the District of South Carolina, sitting by designation.
 OPINION
 CURRIE, District Judge:
 Appellants George H. Lamson and Rosemarie B. Lamson ("the Lamsons") appeal an order of the district court[1] denying their application for attorney's fees under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. Sec. 2412. The issue is whether the district court abused its discretion in finding the government's position "substantially justified." Because the district court failed to apply the proper test to evaluate the government's position, we reverse and remand with instructions.
 I.
 The National Park Service attempted for a number of years to acquire 21.52 acres of a 163.52 acre tract of land owned by the Lamsons to serve as part of a wooded corridor to protect the Appalachian National Scenic Trail from residential development. Although the Lamsoms' land was located in Clarke County, Virginia, it bordered Loudoun County, Virginia. The government hired an appraiser, Richard Bowers, who prepared an appraisal on November 2, 1987, valuing the 21.52 acres with one dwelling unit at $52,040.00 Bowers reached this conclusion by valuing a 20.02 acre portion without any Dwelling Unit Rights ("DUR") at $40,040.00 and the remaining 1.50 acres with one DUR at $12,000.00. On November 16, 1987, the Park Service mailed to the Lamsons an "Individual Offer to Sell Real Property" offering to purchase the property for $52,000.00. The Lamsons had six months from the date of the offer to accept. They declined the offer, claiming that comparable land sales reflected a much higher value.
 Eventually, the matter was turned over to the United States Department of Justice which filed a complaint in condemnation on April 20, 1990. There was no deposit with the court under Fed.R.Civ.P. 71A(j).
 
 
 1
 Approximately two years later, the government obtained a second appraiser, Joe Wingate, who prepared an appraisal dated March 19, 1992, valuing the 21.52 acres at $73,100.00[2] At a hearing on July 1, 1992, the government's attorney informed the court that he had authority to offer $70,000.00 and the Lamsons' attorney stated that his clients believed the land was worth $250,000.00.
 
 
 2
 Approximately one month prior to trial the government's attorney sent a letter dated June 3, 1993, to the Lamsons' attorney stating he would continue to offer the Lamsons the value placed upon the land by the government's second appraiser, Joe Wingate. In a letter dated July 1, 1993, the Lamsons' attorney rejected the offer, which he interpreted as $73,100.00, demanded $175,000.00 and inquired whether the offer included timber value. No settlement was reached.
 
 
 3
 At trial held on July 8, 1993, the government claimed the value of the 21.52 acres was $73,100.00. This figure was based upon the value of all of the Lamsons' land, which the government contended had four DURs, before the partial taking and the value remaining after the partial taking. The government's appraisal witness at trial, Joe Wingate, calculated the value of the Lamsons' land based on one inspection of the property and ten comparable land sales in Clarke County, Virginia. Mr. Wingate valued the whole tract before the partial taking at $635,100.00 and the value after the partial taking at $562,000.00.
 
 
 4
 At trial, Mr. Lamson testified as to the value of the land. He claimed the value of the 21.52 acres was $172,162.00. His conclusion was based upon the value of a 48 acre tract (the "Joe Fleming" tract), which he contended had three DURs[3], before the partial taking and the value remaining after the partial taking. Mr. Lamson calculated the value based upon his knowledge of the land and numerous comparable land sales in both Clarke County and Loudoun County. He valued the "Joe Fleming" tract before the partial taking at $384,000.00 and after the partial taking at $212,000.00. The jury returned a verdict for $156,916.67 and the court entered judgment in that amount.[4]
 
 
 5
 After the time for appeal expired, the Lamsons filed an application for attorney's fees and expenses. They claimed that, as a "prevailing party," they were entitled to attorney's fees because the pre-litigation position of the United States was not "substantially justified." The Lamsons claimed the government's pre-litigation position was based upon the Bowers appraisal which contained numerous errors, including the assumption that the Lamsons' entire property was 98.12 acres. The Lamsons claimed that this pre-litigation position left them with no choice but to litigate. They also claimed the government violated the Uniform Real Property Acquisition Policy Act, 42 U.S.C. Sec. 2651, and that the government's second appraiser, Joe Wingate, was unqualified because his office was in Roanoke, Virginia, four hours from the Lamsons' land, and because the comparable sales upon which he based his appraisal were all from Clarke County.
 
 
 6
 The district court denied the application and found the government's position "substantially justified." The court noted that "[t]he government has relied on the efforts of a single appraiser, whose assessment of the value of the land has not wavered, at least since the court has been aware of his valuation of the property." The court also noted that the valuation depended on whether the land "should be valued similarly to that which was across the road from it or more consistently with property on the same side [as] the subject property, but somewhat removed from it." The court found that the jury accepted some of both sides' testimony, but more of the Lamsons'. The court found that the case could have gone any number of ways at trial and that it would be "hard-pressed ... to find that the government's litigation position has been unreasonable or not substantially justified."
 
 
 7
 The Lamsons filed a motion to alter or amend the order denying attorney's fees. They contended, among other things, that the district court failed to consider the pre-litigation position of the Park Service in determining whether the position of the United States was substantially justified. The court denied the motion. The Lamsons appealed the order denying the application for attorney's fees.
 
 II.
 
 8
 A party who prevails in litigation against the United States is entitled to an award of attorney's fees under the EAJA unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust. 28 U.S.C. Sec. 2412(d)(1)(A).[5] This appeal turns upon whether the district court abused its discretion in determining that the position of the United States was substantially justified. In the district court, the government has the burden of showing substantial justification, and we review the district court's decision for an abuse of discretion. Thompson v. Sullivan, 980 F.2d 280, 281 (4th Cir.1992).
 
 
 9
 The government's position is substantially justified if it has a reasonable basis in law and fact. Pierce v. Underwood, 487 U.S. 552, 565 (1988); Crawford v. Sullivan, 935 F.2d 655, 656 (4th Cir.1991). The "position of the United States" includes both the government's pre-litigation conduct as well as its litigation position. 28 U.S.C. Sec. 2412(d)(2)(D) (" 'position of the United States' means, in addition to the position taken by the United States in the civil action, the action or failure to act by the agency upon which the civil action is based"); I.N.S. v. Jean, 496 U.S. 154, 159 (1990); Thompson, 980 F.2d at 281; Crawford, 935 F.2d at 656-57.
 
 
 10
 In United States v. 312.50 Acres of Land, 851 F.2d 117 (4th Cir.1988), this court considered the application of the EAJA to a land condemnation action. There this court adopted the test enunciated by the Eighth Circuit to determine whether the position of the United States is substantially justified:
 
 
 11
 We recognize that the landowners obtained an award over five times greater than the amount that the government had deposited into the court and only slightly less than five times the value placed on the property by the government's appraiser. We reject this favorable result as the test of whether the government's position was substantially justified. See United States v. 1,378.65 Acres of Land Situate in Vernon County, 794 F.2d 1313, 1318 (8 Cir.1986); United States v. 341.45 Acres of Land, St. Louis Cty., Minn., 751 F.2d 924, 940-41 (8 Cir.1984), vacated without opinion, 786 F.2d 1168 (8 Cir.1986). Rather the test, as articulated by the Eighth Circuit, is for the district court to "focus upon the relationship between the government's offer, the appraisals, and the valuations established by the government's expert witness during trial, rather than the relationship between the government's offer or deposit and the property owner's counter offer, if any, or the jury award ..." (footnotes omitted), 341. 5 Acres, 751 F.2d at 940-41. See also United States v. 0.376 Acres of Land, 838 F.2d 819 (6 Cir.1988). Cf. United States v. Charles Gyurman Land & Cattle Co., 836 F.2d 480 (10 Cir.1987); United States v. 640.00 Acres of Land in Dade County, Fla., 756 F.2d 842, 850 (11 Cir.1985). It is the rule in 341.45 Acres that we adopt.
 
 
 12
 Id. at 118-19. In 341.45 Acres of Land, the Eighth Circuit stated that "we must consider the totality of the circumstances--prelitigation and during litigation--in determining whether the position of the government was substantially justified." 341.45 Acres of Land, 751 F.2d at 940. Because the Eighth Circuit could not determine from the record whether the government's position was substantially justified at both the pre-litigation and litigation stage, it remanded to the district court for further proceedings. The Eighth Circuit directed that "[o]n remand the district court should determine whether the government's position was substantially justified by considering the totality of the circumstances prelitigation and during trial." Id.
 
 
 13
 The Lamsons claim that the district court abused its discretion in failing to apply the proper test, set forth in I.N.S. v. Jean and United States v. 312.50 Acres of Land, in determining whether the government's position was substantially justified. The Lamsons claim the district court only examined the litigation position of the government and did not examine its pre-litigation position, i.e., the $52,040.00 appraisal and $52,000.00 offer, in determining whether its position was substantially justified. In response, the government argues that in 312.50 Acres the court affirmed a district court's refusal to award attorney's fees even though the landowner received five times the amount set by the government appraiser.
 
 
 14
 We conclude that the district court failed to properly apply the standards set forth in I.N.S. v. Jean, United States v. 312.50 Acres of Land, and United States v. 341.45 Acres of Land. Such a failure to apply applicable standards constitutes an abuse of discretion requiring this court to reverse and remand. Thompson v. Sullivan, 980 F.2d 280, 282-83 (4th Cir.1992); Anderson v. Heckler, 756 F.2d 1011, 1013 (4th Cir.1985).
 
 
 15
 It is clear that the order of the magistrate judge focused solely on the government's litigation position and failed to consider any prelitigation activity of the government. Therefore, we reverse and remand to the district court. On remand the district court should focus upon the relationship between the government's offers, the appraisals, and the valuations established by the government's expert witness during trial. See 341.45 Acres of Land, 751 F.2d at 940.
 
 
 16
 In the context of condemnation cases, the district court must determine whether the government's refusal to offer more to the property owners as just compensation had a reasonable basis in fact and in law. 341.45 Acres of Land, 751 F.2d at 940. Any substantial disparity between the government's offer(s), the appraisal(s), and the government's trial evidence should be explained. The passage of time and the timing of the actual takings are the kinds of factors that may explain such a disparity. Id. On remand, the district court should also consider whether the government acted reasonably in relying upon the valuations of its appraisers. The district court may consider the qualifications and possible conflicts of interest of the appraisers, as well as the factual bases for their appraisals in making the determination of reasonableness. Id.
 
 
 17
 The judgment of the district court is reversed, and the case is remanded with instructions to consider the totality of the circumstances pre-litigation and during trial in determining whether the government's position was substantially justified.[6]
 
 REVERSED AND REMANDED WITH INSTRUCTIONS
 
 
 [1]
 Initially, the action was referred to Magistrate Judge B. Waugh Crigler for all pre-trial matters. Subsequently, with consent of the parties, the action was transferred to Magistrate Judge Crigler to conduct any and all proceedings including entry of final judgment
 
 
 [2]
 The record is silent as to why the government obtained a second appraisal and why it obtained a new appraiser to conduct the second appraisal instead of having Mr. Bowers update the original appraisal
 
 
 [3]
 Mr. Lamson contended that the other tract of the land (the "Archibald Fleming" tract) had four additional DURs
 
 
 [4]
 This case presents a situation where both the government and the property owner benefited from litigation. Although the Lamsoms "saved" over $80,000.00 by refusing the government's final offer, the government "saved" over $15,000.00 by going to trial
 
 
 [5]
 28 U.S.C. Sec. 2412(d)(1)(A) provides:
 (d)(1)(A) Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.
 
 
 [6]
 If the district court determines that the position of the United States was not substantially justified, the court must examine the application for attorney's fees in light of Barber v. Kimbrell's, Inc., 577 F.2d 216 (4th Cir.), cert. denied, 439 U.S. 934 (1978) (setting forth twelve factors to consider in determining reasonable attorney's fees), and 28 U.S.C. Sec. 2412(d)(1)(C) ("The court, in its discretion, may reduce the amount to be awarded pursuant to this subsection, or deny an award, to the extent that the prevailing party during the course of the proceedings engaged in conduct which unduly and unreasonably protracted the final resolution of the matter in controversy.")